**E-FILED**
Monday, 18 April, 2005  03:23:29 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

UNITED STATES OF AMERICA,

     *Plaintiff*,

  *v.*                                 Case No. 04-10053

JOHN B. BAKER

     *Defendant.*

## DEFENDANT'S COMMENTARY ON SENTENCING FACTORS

## I.

## INTRODUCTION

Mr. Baker's makes no objection to the presentence report. Assuming the Court spots no mistake, the "advisory," *United States v. Booker*, 125 S. Ct. 738, 757 (2005), guideline range will stand at 108-135 months. After the Court considers that advisory range, the question will remain: what actual sentence will be "sufficient, but not greater than necessary" to meet the objectives of 18 U.S.C. § 3553(a) that now are the controlling considerations in every federal sentence? This commentary addresses that question.

## II.

## DISCUSSION

A.    ***Overview.*** Justice Breyer's remedial opinion for the *Booker* court instructs federal judges that the sentencing considerations set out in § 3553(a) now control the imposition of sentence, rather than binding guidelines. While courts must consider the guideline range, that now is advisory only.

Section 3553(a) requires a court to consider (among other factors) the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, promote respect for law, provide "just punishment," afford adequate deterrence, protect the public, and provide needed educational or vocational training, medical care, "or other correctional treatment." 18 U.S.C. §§ 3553(a)(1), (2)(A) – (D). Courts still must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," too. 18 U.S.C. § 3553(a)(6).

In considering the history and characteristics of the defendant, the United States Sentencing Guidelines capably collect most of the aggravating factors that courts commonly encounter. That tilt toward the aggravating factors appears in the predominance of upward adjustments over downward adjustments in specific offense characteristics listed in each offense guideline in Chapter 2 of the guidelines, and in

2

the Chapter 3 adjustments. Factors that add points to the offense level far outnumber factors that subtract points.

The emphasis on the aggravating continues in subchapters 5H and 5K, which discourage or forbid more grounds for downward departure than they encourage. Subchapter 5H includes no recommended downward departures and only two departure considerations (criminal history, § 5H1.8, and dependence upon criminal activity for livelihood, § 5H1.9) that cut both ways. Subchapter 5K includes 13 suggestions of upward departure (§§ 5K2.1 through 5K2.9, 5K2.14, 5K2.17, 5K2.18, 5K2.21), but only eight suggestions of downward departure (§§ 5K1.1, 5K2.10, 5K2.11, 5K2.12, 5K2.13, 5K2.16, 5K2.20 and 5K2.22).

That is not necessarily an inappropriate imbalance. The trend in due process jurisprudence of sentencing, most prominent in capital cases, is to limit aggravating factors to those set out in statutes, but to reject limits on mitigating factors. *See Penry v. Lynaugh*, 492 U.S. 302, 327-28 (1989) ("the jury must be allowed to consider and give effect to mitigating evidence relevant to a defendant's character or record or the circumstances of the offense;" there, mental retardation and childhood abuse), *overruled on other grounds*, *Atkins v. Virginia*, 536 U.S. 304 (2002); *Buchanan v. Angelone*, 522 U.S. 269, 276 (1998) ("the sentencer may not be precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence"); *compare* 18 U.S.C. § 3592(a) (in a capital case, sentencing jury "shall consider *any* mitigating factor, including the following;" italics

3

added), *with* § 3592(b) (same jury may consider only enumerated statutory aggravating factors).

The sentencing guidelines provide a useful analog in non-capital cases. They collect many statutory aggravating factors and a few mitigating factors, but courts now appropriately may look to individual cases and circumstances for any other mitigating factors that may apply.

A focus on enumerated aggravating factors, but on both enumerated and non-enumerated mitigating factors, fits closely with the statutory command that the sentence in the end be "sufficient, but not greater than necessary" to achieve the goals of sentencing that § 3553(a) establishes. Congress' requirement is the lowest adequate sentence. The statute forbids an adequate sentence that is higher than it might be. The statute favors mitigation of the sentence, although not depreciation of the crime.

**B.     *This Case*.** John Baker surveys both the aggravating and mitigating factors that apply to his case. Those underlie most of the goals that § 3553(a) lists.

1.     The guideline calculation here appropriately and adequately considers all aggravating factors that apply to John Baker's distribution of child pornography. His enhanced base offense level of 34 takes a real-offense approach, captures all relevant conduct, and is 17 levels above the lowest offense level for similar offenses. *See* U.S. SENTENCING GUIDELINE MANUAL §2G2.2(a) (base offense

level, which starts at offense level 17).  Further, Baker's complete lack of any prior convictions either as a juvenile or as and adult result in 0 criminal history points and the lowest Criminal History Category I.  Mr. Baker objects to none of this.  The guideline calculations are appropriate.

        2.    The guideline range does not consider most mitigating factors, though.  Indeed, it considers one only:  acceptance of responsibility.  The 3 point reduction is correct and appropriate.

This case includes other important factors that the guideline range does not reflect.  In no particular order of importance, Baker considers those now.

First, Mr. Baker has been completely cooperative with law enforcement authorities and the government.  Mr. Baker consented to the search of his residence and computers. He waived his rights and agreed to be interviewed by agents on more than one occasion. Mr. Baker identified photographs and fully confessed his illegal conduct.

Second, the presentence report briefly illustrates some of the positive characteristics of Mr. Baker. Ranked 23rd out 55 students at Tri-Point High School Mr. Baker graduated with a 3.951 average on a 5.0 scale. He was accepted and attended Illinois State University in Normal and was active in his Church. He consistently was employed and is well liked by family and friends.

Third, Mr. Baker's mother left the family before he was one year old. John had no other siblings. John lived with his father who moved from town to

1:04-cr-10053-JBM-JAG    # 11    Page 6 of 14

town working as a minister. He moved from Little Rock, Arkansas to Alvin, Texas, to Austin, Texas to Durant, Oklahoma to Idabel, Oklahoma to Piper City, Illinois to and finally to Bloomington, Illinois where he committed the illegal conduct, that at age 27, he has confessed. . After Mr. Baker was incarcerated his father, Ora Baker, moved away again, to Calvert Texas.

Fourth, Mr. Baker's complete lack of criminal history reflects the young man who, but for his criminal conduct, had a bright future ahead of him and who today presents an excellent prospect for rehabilitation. Mr. Baker does not know what caused him to act in ways that were contrary to his values and the way he was raised. He want's to participate in treatment so he can understand why his life took this tragic turn.

The mitigation in this record lies in the clear probability that properly addressing the issue of John Baker's illegal and uncharacteristic behavior would eliminate his danger to the community. If the underlying reasons for his behavior are addressed it appears the crimes would disappear and John Baker would be returned to the intelligent, hard working and law abiding citizen he was and can be.

Eventually, of course, even a young adult must take responsibility for his own actions and its attendant damage. That time is now for John Baker. Mr. Baker has spent the last year in the custody of the Henry County Jail. There he has had a lot of time to think about his life and the consequences of his actions. He has

re-established an honest relationship with his family and the values with which he was raised. The shock and impact of a solid year in custody for a person who has never been in custody cannot be overstated. Any value of incarceration has been attained. Mr. Baker is clean and sober and exceptionally willing to participate fully in any treatment program ordered by the Court. He knows what he did was wrong and he wants to understand why he acted this way. The Court should sentence him to prison and to sex offender treatment. Mr. Baker is a willing participant for treatment either inpatient or outpatient. Outpatient treatment would be more cost effective than to impose a more lengthy prison sentence for the purpose of treatment. 18 U.S.C. § 3553(a)(2)(D). A sentence of 60 months will provide "just punishment," 18 U.S.C. § 3553(a)(2)(A), but not more than necessary.

At sixty months, this term of imprisonment will be the only time Mr. Baker has ever been sentenced to incarceration of any kind. *See* PSR ¶¶ 33, 34. It also will mark his first trip to prison. Both points are significant. Such a sentence will be sufficient, but not greater than necessary, to reflect the seriousness of this offense (possessing and distributing illegal images to an undercover police officer), to promote respect for the law, and to afford adequate deterrence. 18 U.S.C. §§ 3553(a)(2)(A), (B).

The advisory guideline range calls for 108 to 135 months of prison, not 60. But, as noted, that guideline range does not take into consideration the

mitigating factors of Baker's lack of stability as a child, his overall good character, academic ability, and desire to participate in a program of rehabilitation.

The sentence here, if it is to protect the public in the long run and correct John Baker, should set him on a new trajectory, away from illegal conduct. Because the statute requires that the sentence be sufficient to do that, but also not greater than necessary, the Court in the end must ask whether one hundred eight to one hundred thirty five months in prison, with the concomitant cost to taxpayers and loss of opportunity for Baker to work and finish his education, will suit that purpose, while sixty months in prison and sex offender treatment and counseling will not. Defense counsel suggests that the additional time is not likely to add much. Sixty months is enough time to make an impression upon Mr. Baker, especially considering that he has never before been deprived of his liberty and has a full year in county jail, and it certainly should be time enough to complete an inpatient treatment regimen. If it is not, the additional time is unlikely to help.

## III.

## EVIDENCE

*A. Witnesses.* In addition to the undisputed evidence contained in the PSR, John Baker intends to present the testimony of two witnesses who know him well and can testify from personal experience about of John Baker at the sentencing hearing.

**B. Letters.** Attached to this Commentary as Appendix A are letters which John Baker submits to the Court as mitigating evidence:

1. **Rev. Kathy King-Nobles** (Known John since 1995)

- "I believe that he started down this illegal and dangerous road without any intent to cause harm, but got caught up on a slippery slope and committed crimes that he would never have imagined he would do."

- "I care about John and believe strongly that he can make a positive contribution to our world."

- "My hope is that his punishment will not only serve as that, but would also afford him the opportunity to receive the kind of guidance and mentoring that will direct his life in a positive, healthy, and compassionate way."

2. **Rebecca Forrester** (Friend)

- "John has been kind of sheltered in a since and has slipped out of reality."

- "John is a good person and somehow got steered the wrong way in his attempt in growing up. Raised by his minister father and no mother have done something to John."

3. **Ona Lambert** (Aunt)

- "He has always been a nice, sweet, gentle, boy. As he grew up he stayed the same."

- "I will never understand why he (or anyone) can watch that kind of garbage but I will never believe John meant to hurt anyone. When he gets out his father and the rest of his family will see that he has better things to do."

- "I just want you to know we love John and will do anything to help him."

4. **Bert Popejoy** (Interim Transportation Director McClean County / Former Employer)

- "John at time seemed to be a little on the naive side and I believe he could have been taken advantage of very easily or misguided in some of his actions."

9

Page 10 of 14 reproduction

●"I would like to state that if circumstances were different, John would be welcomed back to drive a school bus."

5. **<u>Todd M. Murphy</u>** (Former employer)

●"John was always welcome in my home and will always be welcome, he was very nice and courteous to my wife and kids..."

●"John loves kids and from spending all the time with John that I did I saw a good-hearted guy that would help anyone in any way he could and would not hurt any child in any way. Like I said, John is welcome in my home with my wife and kids."

●"...John is very reliable, always early and always did a great job at everything I asked him to do."

6. **<u>Bonnie Jardine</u>** (Friend)

●"He has been a close and understanding friend who was always there for me in a time of need. I have always felt that John is caring and honest."

●"He showed true devotion to working with his church and spending time with his friends."

●"I would certainly believe that John is someone that is eager to learn from his mistakes and do whatever it takes to be a better person."

7. **<u>Virginia Albee</u>** (Friend of the family)

●"I'm praying you will see that John and his father are fine Christian people and will allow him to go home with his father on probation."

8. **<u>Yvonne Dewell</u>** (Aunt)

●"John has acknowledged that he needs and seeks help, and I pray that you will make that available, even mandatory."

●"Before sentencing, please visit with him a few minutes, so that you can know just who John is and how capable he is of doing good. He has tried to do that his whole life. I ask you for leniency and for direction, so that this wonderful young man will have the opportunity to be all that he can be."

10

- "We love him dearly and have never found reason to doubt his character in any way."

9. **<u>Sidney E. Baker</u>** (Uncle)

- "The current charge of child pornography has surprised me and seems completely out of character for John."

# IV.

# CONCLUSION

All statutory and other relevant factors considered, a sentence in the range of sixty months, rather than one hundred eight to one hundred thirty five, would be "sufficient, but not greater than necessary" in this case. A fine of at least $1,000, participation and participation in a sex offender treatment program would also make sense. Defense counsel recommends a sentence with at least these features.

Dated at Peoria, Illinois, April 18, 2005.

Respectfully submitted,
JOHN BAKER,
*Defendant*

_____
s/ Karl W. Bryning

Karl W. Bryning
Assistant Federal Public Defender
Attorney for Defendant
401 Main Street, Suite 1500
Peoria, Illinois 61602
Phone: 309/671-7891
FAX: 309/671-7898
Email: karl_bryning@fd.org

## APPENDIX A

Letter from Rev. Kathy King-Nobles, friend . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Letter from Rebecca Forrester, friend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Letter from Ona Lambert, Aunt....................................................................iii

Letter from Bert Popejoy, former employer...............................................iv

Letter from Todd M. Murphy, former employer.........................................v

Letter from Bonnie Jardine, friend..............................................................vi

Letter from Virginia Albee, friend of the family.........................................vii

Letter from Yvonne Dewell, Aunt...............................................................viii

Letter from Sidney E. Baker, Uncle.............................................................ix

CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Mr. Thomas Keith, Assistant United States Attorney, One Technology Plaza, 211 Fulton Street, Suite 400, Peoria, Illinois 61602.


s/ Karl W. Bryning

Karl W. Bryning
Assistant Federal Public Defender
Attorney for Defendant
401 Main Street, Suite 1500
Peoria, Illinois 61602
Phone: 309/671-7891
FAX: 309/671-7898
Email: karl_bryning@fd.org